# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYMAN BORHAN,<br><br>  Plaintiff,<br><br>  v.<br><br>MATTHEW CATE, et al.,<br><br>  Defendants. | 1:12-cv-01563-BAM (PC)<br><br>SCREENING ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM AND GRANTING LEAVE TO AMEND<br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

### First Screening Order

**I.     Screening Requirement and Standard**

Plaintiff Payman Borhan ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint, filed on September 24, 2012, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at Chowchilla State Prison.  The events in his complaint are alleged to have occurred while Plaintiff was housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California.  Plaintiff names (1) Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation, in his official capacity; (2) D. Foston, Chief of the Inmate Appeals Branch, in his individual and official capacity; (3) Kathleen Allison, Acting Warden at CSATF, in her official capacity; (4) P. Mendes, Appeals Coordinator at CSATF, in his official capacity; (5) R. Gomez, Appeals Coordinator at CSATF, in his individual and official capacity; (6) M. Tann, Associate Warden at CSATF, in his official capacity; (7) M. Baires, Captain, A Facility at CSATF, in his official capacity; (8) G. Beard, Correctional Sergeant at CSATF, in his official capacity; and (9) D. Trevino, Correctional Sergeant at CSATF, in his individual and official capacity.

1     Plaintiff alleges as follows:  Plaintiff arrived at CSATF on May 20, 2009, and was
2 cleared for the yard (i.e., off of orientation status) on June 18, 2009.  Within a month of being
3 cleared for the yard, Plaintiff went to the library to check out a book entitled <u>Conquering</u>
4 <u>Negative Emotions</u> to help a friend find some tools to overcome his pain.  The due date to return
5 the book was July 11, 2009.
6     Due to a threat against staff, the yard was closed for a week, including July 10, 2009.
7 Unbeknownst to Plaintiff, his friend returned the book via the book return drop box on July 11,
8 2009.  On the same day, and not knowing that the book had been returned, Plaintiff approached
9 Mrs. Kitten to explain that the book had been loaned to a friend and that she could retrieve it
10 from him.  Mrs. Kitten admonished Plaintiff that books were not supposed to be loaned to others.
11 Plaintiff responded that he did not know of this rule and it would not happen again.
12     During the following week, Plaintiff's friend reported that he had returned the book via
13 the book drop box.
14     On July 21, 2009, Plaintiff went to the library to check out another book.  Mrs. Kitten
15 then advised him that his privileges for checking out recreational books had been suspended.
16 Plaintiff was free to read recreational books in the library or conduct legal research, but he could
17 not check out any books or tapes.  Mrs. Kitten did not specify how long such privileges would be
18 suspended.  When Mrs. Kitten pulled the card for the book that Plaintiff had checked out,
19 Plaintiff noticed that the book had been returned on July 11, 2009, its due date.  When Plaintiff
20 pointed this out to Mrs. Kitten, she replied, "It doesn't matter, the problem is that you loaned the
21 book to someone else."  (ECF No. 1, p. 12.)
22     Over the next two months, Plaintiff approached Mrs. Kitten four times to inquire about
23 how long his privileges would be suspended and to reiterate that the book had been returned on
24 time.  On each occasion, Mrs. Kitten mumbled something unintelligible and walked away.  On
25 the fifth occasion, Mrs. Kitten again admonished Plaintiff that he should not have loaned the
26 book to someone else. Plaintiff explained to her that such a rule was not in effect at other prisons
27 and that he did not did not know of the rule.  Mrs. Kitten responded that not knowing was not an
28 excuse and walked away.  Plaintiff waited two weeks before approaching Mrs. Kitten again, and

3

1  then every thirty days thereafter, to ask when his privileges would be reinstated. Each time, she
2  replied, "I don't know."
3     On September 15, 2009, after having spent months listening to music with "ear bud"
4  headphones and having a cup of tea in the library, Mrs. Kitten approached Plaintiff and ordered
5  him to remove his headphones because he was not allowed to listen to music while in the library.
6  Plaintiff complied with the order, but noticed that another inmate was wearing headphones.
7  Although Plaintiff did not mention this to Mrs. Kitten, she noticed him looking around. When
8  she saw the other inmate with headphones, she hurried off to order him to remove them.
9  Plaintiff noted that on subsequent visits to the library he saw the same inmate wearing
10 headphones in full view of Mrs. Kitten.
11    On September 16, 2009, after giving Mrs. Kitten his I.D. to enter the library, she handed
12 it back to him and said that Plaintiff could not bring his cup of tea into the library. Plaintiff set
13 the cup outside the door and entered the library. Twenty minutes later, when she did an unlock,
14 Plaintiff waited until everyone had left and then stepped out through the door, picked up his tea
15 and proceeded to drink it. Plaintiff finished his tea and fell into line with the new group entering
16 the library. Upon entering, Mrs. Kitten grabbed Plaintiff by the shirt, dragged Plaintiff out of the
17 library and called a guard. When Plaintiff asked what he had done wrong by stepping out to
18 drink his tea, Mrs. Kitten exclaimed, "You drank it inside, not outside!"
19    On September 18, 2009, Plaintiff gave his legal work to John, the inmate library clerk,
20 and asked him to show it to Mrs. Kitten and make three copies. Later that day, Plaintiff saw
21 Mrs. Kitten and John standing outside the library. When Plaintiff approached them, John handed
22 Plaintiff his copies and stated that as an indigent inmate Plaintiff was entitled to only two copies,
23 that the Attorney General would respond on behalf of the Warden and that Plaintiff should only
24 serve the Attorney General. As John and Mrs. Kitten seemed to be in a rush, Plaintiff did not
25 feel like it was the right time to explain his circumstances. Plaintiff did not argue with them and
26 decided that he would return to the library on the following Tuesday to explain his need for the
27 extra set of copies.
28

On September 22, 2009, Plaintiff returned to the library, but Mrs. Kitten was not working that day. Instead, it was her supervisor, Mrs. Rowell. Plaintiff explained to Mrs. Rowell that he had already received two copies of his legal work, but according to statute, the Warden needed to be served. Plaintiff also explained that he previously forgot to get a copy of an exhibit that needed to be sent to the state bar. Mrs. Rowell stated that such was allowable, but John, the inmate clerk, objected. Mrs. Rowell explained that it was a different case number and the indigent rule did not apply. She also told him to check the statute regarding service of the Warden. John responded that he did not have time to check the computer and had other tasks to do. John snatched the papers from Plaintiff and made copies.

On September 23 or 24, 2009, Plaintiff returned to the library. Upon entering, inmate John approached Plaintiff and said, "I think [Mrs. Kitten] wants to write you a 115." When Plaintiff asked him why, John said it was because of the extra copies. Plaintiff asked to speak with Mrs. Kitten, but was told that she did not want to talk to him. Mrs. Kitten came out of her office at one point, but refused to acknowledge Plaintiff.

On October 26, 2009, Plaintiff was called to the Facility A program office for his administrative 115 hearing. The hearing officer, Correctional Sergeant D. P. Trevino, explained that Plaintiff had been charged with manipulation of staff. After reading the charges, Sergeant Trevino asked how Plaintiff wished to plead. Plaintiff pleaded not guilty and then explained what happened to him. Sergeant Trevino listened to Plaintiff's statement and viewed his proofs of service, but found Plaintiff guilty of the 115. Sergeant Trevino sentenced Plaintiff to thirty days loss of yard and telephone privileges. Sergeant Trevino informed Plaintiff that he could appeal the hearing and findings.

On October 28, 2009, Mrs. Kitten refused Plaintiff entrance into the library because he was on yard restriction.

After approximately one week, another inmate informed Plaintiff that he was entitled to at least one hour of yard time. When Plaintiff asked about it, he was informed that he was allowed an hour between 2 and 3 p.m. Later that same day, between 2 and 3, Plaintiff was called

5

1   back to the building and informed by floor officers that Mrs. Kitten had called twice complaining
2   that Plaintiff was not entitled to one hour on the yard.
3       On November 19, 2009, Plaintiff received the final copy of his 115.  He noticed that his
4   entire statement was missing from the record and that Sergeant Trevino stated that Plaintiff had
5   failed to provide any evidence.  The final report was signed by Correctional Sergeant B. Beard,
6   Captain M. Baires, Sergeant Trevino and Associate Warden M. Tann.
7       On November 24, 2009, Plaintiff submitted a CDC 602 Inmate Appeal Form related to
8   the following: (1) Mrs. Kitten's rule violation report; (2) Sergeant Trevino's alleged violation of
9   the Due Process Clause of the Fourteenth Amendment; and (3) the regulation related to copies
10  for indigent inmates.
11      On January 12, 2010, Plaintiff was interviewed by Appeals Coordinator R. Gomez.
12  Plaintiff reiterated events and added that Mrs. Kitten had continued her prejudicial conduct.  Mr.
13  Gomez did not write down Plaintiff's examples or take notes of any kind.
14      On January 28, 2010, Plaintiff received the Second Level Review denial of his 602,
15  which was signed by Kathleen Allison and Appeals Coordinator P. Mendes. On the same day,
16  Plaintiff resubmitted his 602 at third level of review.  Plaintiff included his complaint that his
17  statements given to Mr. Gomez were not recorded as part of the appeal.
18      On March 19, 2010, Plaintiff received a response from the Inmate Appeals Branch
19  informing him that he had exhausted his administrative remedies.  Plaintiff understood this to
20  mean that there was no remedy available.  The response was signed by D. Foston, Chief of the
21  Inmate Appeals Branch.
22      In May, an inmate informed Plaintiff that he could appeal a 115 to the court.
23      As relief, Plaintiff requests that his CDC 115 Rules Violation Report be removed from
24  his C-File and the finding of guilty be reversed or dismissed.  Plaintiff complains that the guilty
25  finding adversely affects his liberty interest under an indeterminate sentence.  Plaintiff also
26  requests that CDC's investigative procedures be improved and the DOM regulation regarding
27  copies for indigent inmates be repealed/abolished.
28

III. **Deficiencies of Complaint**

### A. Supervisory Liability

To the extent that Plaintiff seeks to hold Defendants Cate liable based upon supervisory liability, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff has not alleged that Defendant Cate participated in or directed any violations or knew of the violations involving Plaintiff and failed to prevent them. Plaintiff will be given leave to cure this deficiency.

### B. Appeals Procedure

Plaintiff appears to bring suit against Defendants Foston, Allison, Mendes, and Gomez arising out of their review and denial of his 602 appeal. The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993). The mere denial of a grievance does not rise to the level of a constitutional violation. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Accordingly, Plaintiff has not stated a cognizable claim arising out of the review of his grievance by Defendants Foston, Allison, Mendes, and Gomez.

### C. Due Process

Plaintiff complains that Defendant Trevino did not include Plaintiff's statement in the final copy of his 115 and found that Plaintiff failed to provide any evidence. Plaintiff alleges that these actions violated his due process rights.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of

action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin, 515 U.S. 472.

Plaintiff has not stated any facts to address the requirements set forth in Wolff. Plaintiff's allegations that his statement was omitted from the final 115 and his disagreement with Sergeant Trevino's factual findings are insufficient to support a claim of denial of procedural due process. Plaintiff will be given an opportunity to cure this deficiency to the extent that he is able to do so. Plaintiff also will be given an opportunity to clarify the basis of his due process claim.

### D. Conclusion and Order

Plaintiff's complaint fails to state a cognizable claim against any of the defendants. However, the Court will provide Plaintiff with the opportunity to file an amended complaint to cure the identified deficiencies. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). Plaintiff

may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what the named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012) (en banc).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint; and
4. <u>If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be dismissed with prejudice for failure to state a claim.</u>

IT IS SO ORDERED.

Dated:   **January 24, 2014**              /s/ Barbara A. McAuliffe
                                                                  UNITED STATES MAGISTRATE JUDGE