# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYMAN BORHAN,<br><br>        Plaintiff,<br><br>  v.<br><br>MATTHEW CATE, et al.,<br><br>        Defendants. | 1:12-cv-01563-BAM (PC)<br><br>ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM |

### I.    Screening Requirement and Standard

Plaintiff Payman Borhan ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On January 24, 2014, the Court dismissed Plaintiff's complaint with leave to amend. Plaintiff's first amended complaint, filed on February 10, 2014, currently is before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II.     Plaintiff's Allegations

Plaintiff is currently housed at Chowchilla State Prison. The events in his complaint are alleged to have occurred while Plaintiff was housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California. Plaintiff names (1) Jeffrey Beard, Director of the California Department of Corrections and Rehabilitation, in his official capacity; (2) D. Trevino, Correctional Sergeant at CSATF, in his individual and official capacity; and (3) S. Killen, Library Technical Assistant, in her individual and official capacity.

Plaintiff alleges as follows: Plaintiff arrived at CSATF on May 20, 2009, and was cleared for the yard (i.e., off of orientation status) on June 18, 2009. Within a month of being cleared for the yard, Plaintiff went to the library to check out a book entitled Conquering Negative Emotions to help a friend find some tools to overcome his pain. The due date to return the book was July 11, 2009.

1    Due to a threat against staff, the yard was closed for a week, including July 10, 2009.
2 Unbeknownst to Plaintiff, his friend returned the book via the book return drop box on July 11,
3 2009. On the same day, and not knowing that the book had been returned, Plaintiff approached
4 Mrs. Killen to explain that the book had been loaned to a friend and that she could retrieve it
5 from him. Mrs. Killen admonished Plaintiff that books were not supposed to be loaned to others.
6 Plaintiff responded that he did not know of this rule and it would not happen again. During the
7 following week, Plaintiff's friend reported that he had returned the book via the book drop box.
8    On July 21, 2009, Plaintiff went to the library to check out another book. Mrs. Killen
9 then advised him that his privileges for checking out recreational books had been suspended.
10 Plaintiff was free to read recreational books in the library or conduct legal research, but he could
11 not check out any books or tapes. Mrs. Killen did not specify how long such privileges would be
12 suspended. When Mrs. Killen pulled the card for the book that Plaintiff had checked out,
13 Plaintiff noticed that the book had been returned on July 11, 2009, its due date. When Plaintiff
14 pointed this out to Mrs. Killen, she replied "It doesn't matter, the problem is that you loaned the
15 book to someone else." (ECF No. 14, p. 7.)
16    Over the next two months, Plaintiff approached Mrs. Killen four times to inquire about
17 how long his privileges would be suspended and to reiterate that the book had been returned on
18 time. On each occasion, Mrs. Killen mumbled something unintelligible and walked away. On
19 the fifth occasion, Mrs. Killen again admonished Plaintiff that he should not have loaned the
20 book to someone else. Plaintiff explained to her that such a rule was not in effect at other prisons
21 and that he did not did not know of the rule. Mrs. Killen responded that not knowing was not an
22 excuse and walked away. Plaintiff waited two weeks before approaching Mrs. Killen again, and
23 then every thirty days thereafter, to ask when his privileges would be reinstated. Each time, she
24 replied "I don't know."
25    On September 15, 2009, after having spent months listening to music with "ear bud"
26 headphones and having a cup of tea in the library, Mrs. Killen approached Plaintiff and ordered
27 him to remove his headphones because he was not allowed to listen to music while in the library.
28 Plaintiff complied with the order, but noticed that another inmate was wearing headphones.

3

1  Although Plaintiff did not mention this to Mrs. Killen, she noticed him looking around.  When
2  she saw the other inmate with headphones, she hurried off to order the inmate to remove them.
3  Plaintiff noted that on subsequent visits to the library he saw the same inmate wearing
4  headphones in full view of Mrs. Killen.
5      On September 16, 2009, after Plaintiff gave Mrs. Killen his I.D. to enter the library, she
6  handed it back to him and said he could not bring his cup of tea into the library.  Plaintiff set the
7  cup outside the door and entered the library.  Twenty minutes later, when Mrs. Killen did an
8  unlock, Plaintiff waited until everyone had left and then stepped out through the door, picked up
9  his tea and proceeded to drink it.  Plaintiff finished his tea and fell into line with the new group
10 entering the library.  Upon entering, Mrs. Killen grabbed Plaintiff by the shirt, dragged Plaintiff
11 out of the library and called a guard.  When Plaintiff asked what he had done wrong by stepping
12 out to drink his tea, Mrs. Killen exclaimed "You drank it inside, not outside!"  (ECF No. 14, p.
13 8.)
14     On September 18, 2009, Plaintiff gave his legal work to John, the inmate library clerk,
15 and asked him to show it to Mrs. Killen and make three copies.  Later that day, Plaintiff saw
16 Mrs. Killen and John standing outside the library.  When Plaintiff approached them, John handed
17 Plaintiff his copies and stated that as an indigent inmate Plaintiff was entitled to only two copies,
18 that Plaintiff should only serve the Attorney General.  As John and Mrs. Killen seemed to be in a
19 rush, Plaintiff did not feel like it was the right time to explain his circumstances.  Plaintiff did not
20 argue with them and decided that he would return to the library on the following Tuesday to
21 explain his need for the extra set of copies.
22     On September 22, 2009, Plaintiff returned to the library, but Mrs. Killen was not working
23 that day.  Instead, it was her supervisor, Mrs. Rowell.  Plaintiff explained to Mrs. Rowell that he
24 had already received two copies of his legal work, but according to statute, the Warden needed to
25 be served.  Plaintiff also explained that he previously forgot to get a copy of an exhibit that
26 needed to be sent to the state bar.  Mrs. Rowell stated that such was allowable, but John, the
27 inmate clerk, objected.  Mrs. Rowell explained that it was a different case number and the
28 indigent rule did not apply.  She also told him to check the statute regarding service of the

1  Warden.  John responded that he did not have time to check the computer and had other tasks to
2  do.  John snatched the papers from Plaintiff and made copies.

3  On September 23 or 24, 2009, Plaintiff returned to the library.  Upon entering, inmate
4  John approached Plaintiff and said "I think [Mrs. Killen] wants to write you a 115."  When
5  Plaintiff asked why, John said it was because of the extra copies.  Plaintiff asked to speak with
6  Mrs. Killen, but was told that she did not want to talk to him.  Mrs. Killen came out of her office
7  at one point, but refused to acknowledge Plaintiff.

8  On October 26, 2009, Plaintiff was called to the Facility A program office for his
9  administrative 115 hearing.  The hearing officer, Correctional Sergeant D. P. Trevino, explained
10 that Plaintiff had been charged with manipulation of staff.  After reading the charges, Sergeant
11 Trevino asked how Plaintiff wished to plead.  Plaintiff pleaded not guilty and then explained
12 what happened to him.  Sergeant Trevino listened to Plaintiff's statement and viewed Plaintiff's
13 proofs of service offered in defense, but found Plaintiff guilty of the 115.  Sergeant Trevino
14 sentenced Plaintiff to thirty days loss of yard and telephone privileges.  Sergeant Trevino
15 informed Plaintiff that he could appeal the hearing and findings.

16 On October 28, 2009, Mrs. Killen refused Plaintiff entrance into the library because he
17 was on yard restriction.

18 After approximately one week, another inmate informed Plaintiff that he was entitled to
19 at least one hour of yard time.  When Plaintiff asked about it, he was informed that he was
20 allowed an hour between 2 and 3 p.m.  Later that same day, between 2 and 3, Plaintiff was called
21 back to the building and informed by floor officers that Mrs. Killen had called twice complaining
22 that Plaintiff was not entitled to one hour on the yard.

23 On November 19, 2009, Plaintiff received the final copy of his 115.  He noticed that his
24 entire statement was missing from the record and that Sergeant Trevino stated that Plaintiff had
25 failed to provide any evidence.  The final report was signed by Correctional Sergeant B. Beard,
26 Captain M. Baires, Sergeant Trevino and Associate Warden M. Tann.

27 On November 24, 2009, Plaintiff submitted a CDC 602 Inmate Appeal Form related to
28 the following: (1) Mrs. Killen's rule violation report; (2) Sergeant Trevino's alleged violation of

5

1  the Due Process Clause of the Fourteenth Amendment; and (3) the regulation related to copies
2  for indigent inmates.
3        On January 12, 2010, Plaintiff was interviewed by Appeals Coordinator R. Gomez.
4  Plaintiff reiterated events and added that Mrs. Killen had continued her prejudicial conduct.  Mr.
5  Gomez did not write down Plaintiff's examples or take notes of any kind.
6        On January 28, 2010, Plaintiff received the Second Level Review denial of his 602,
7  which was signed by Kathleen Allison and Appeals Coordinator P. Mendes. On the same day,
8  Plaintiff resubmitted his 602 at third level of review.  Plaintiff included his complaint that his
9  statements given to Mr. Gomez were not recorded as part of the appeal.
10        On March 19, 2010, Plaintiff received a response from the Inmate Appeals Branch
11  informing him that he had exhausted his administrative remedies.  Plaintiff understood this to
12  mean that there was no remedy available.  The response was signed by D. Foston, Chief of the
13  Inmate Appeals Branch.
14        In early June, an inmate informed Plaintiff that he could appeal a 115 to the court.
15        In November 2012, Plaintiff was transferred to Avenal State Prison as a form of
16  retaliation for filing his 1983 complaint. On December 2, 2012, Plaintiff saw that Mrs. Killen
17  was the librarian at Avenal State Prison. On January 18, 2012, Plaintiff was moved from Avenal
18  State Prison.
19        As relief, Plaintiff requests that his CDC 115 Rules Violation Report be declared invalid.
20  Alternatively, Plaintiff requests a fair hearing on the CDC 115.  Plaintiff complains that the
21  guilty finding adversely affects his liberty interest and may result in a "3 to 5 years denial" by the
22  Board of Parole Hearing.  Plaintiff also requests monetary damages.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**III.     Discussion**[1]

    **A. Due Process**

Plaintiff complains that Defendant Trevino did not include Plaintiff's statement in the final copy of his 115 and found that Plaintiff failed to provide any evidence. Plaintiff alleges that these actions violated his due process rights.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the

---

[1] The Court's discussion excludes Plaintiff's new contentions that he was retaliated against for filing the instant action. Plaintiff is cautioned that Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002). Thus, Plaintiff's claims of retaliation for bringing the instant action may not be raised here because the facts supporting this a claim took place after the filing of this action, and Plaintiff could not have exhausted his administrative remedies as to these allegations before the instant action was filed.

prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin, 515 U.S. 472.

Plaintiff has not stated any facts to address the requirements set forth in Wolff. Plaintiff's allegations that his statement was omitted from the final 115 and his disagreement with Sergeant Trevino's factual findings are insufficient to support a claim of denial of procedural due process. Plaintiff was previously given an opportunity to cure this deficiency, but was unable to do so. Further leave to amend is not warranted.

### B.  Other Allegations

Plaintiff claims that Defendant Killen issued a false CDC 115 document and he brings suit against Defendant Beard as the person with the authority to remove the falsified report. However, Plaintiff cannot state a constitutional claim against Defendant Killen based on an allegation that she created a false rules violation report.  A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a liberty interest.  See Lopez v. Celaya, 2008 WL 205256, *5 (N.D. Cal. Jan. 23, 2008) (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989)).  If a prisoner is afforded procedural due process in a disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983. Id.; see also Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir.1984).  As discussed above, Plaintiff has not stated a due process claim regarding his disciplinary proceedings, and he cannot state a claim against Defendant Killen or Defendant Beard based on an allegedly false CDC 115.  This claim cannot be cured by amendment.

### IV.  Conclusion and Order

Plaintiff's complaint fails to state a cognizable section 1983 claim against any of the defendants.  Although Plaintiff was provided with the relevant legal standards, he was unable to cure the deficiencies identified by the Court and his claims cannot be cured by amendment.  As such, further leave to amend shall not be granted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

1  Accordingly, it is HEREBY ORDERED that this action is DISMISSED based on
2  Plaintiff's failure to state a cognizable section 1983 claim.  This dismissal is subject to the
3  "three-strikes" provision set forth in 28 U.S.C. § 1915(g).
4  IT IS SO ORDERED.

   Dated:   **February 14, 2014**              /s/ *Barbara A. McAuliffe*
                                               UNITED STATES MAGISTRATE JUDGE